**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In re: Rare Breed Triggers Patent Litigation** | 4:26-md-03176-ALM<br>MDL 3176 |
| ABC IP, LLC *et al.*,<br>*Plaintiffs*,<br>v.<br>MERCIER AND SONS LLC *et al.*,<br>*Defendants*. | Civil Action No. 4:26-cv-01030<br><br>**AMENDED ANSWER AND COUNTERCLAIMS TO FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**Demand For Jury Trial** |

Mercier and Sons, LLC, 144.1 Recoil Systems, Wayne Mercier, an individual, and Samantha Mercier, an individual (collectively, "Defendants") respond to the First Amended Complaint for Patent Infringement ("Complaint") of ABC IP, LLC ("ABC"), Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") as follows. For convenience, this Amended Answer uses the headings used in the Complaint; however, doing so is not an admission that those headings are correct or appropriate. Every allegation not specifically admitted is denied.

## PARTIES

1. Defendants lack knowledge or information sufficient to form a belief regarding the allegations of ¶1 of the Complaint.

2. Defendants lack knowledge or information sufficient to form a belief regarding the

allegations of ¶2 of the Complaint.

3. Defendants admit the allegations of ¶3 of the Complaint.

4. Defendants admit the allegations of ¶4 of the Complaint.

5. Defendants admit that Mr. Mercier is an individual and deny the remaining allegations of ¶5 of the Complaint.

6. Defendants admit that Ms. Mercier is an individual and deny the remaining allegations of ¶6 of the Complaint.

**JURISIDICTION AND VENUE**

7. With respect to ¶7 of the Complaint, Defendants admit that Plaintiffs brought an action for patent infringement but deny the action has merit.

8. Defendants admit the allegations of ¶8 of the Complaint.

9. Defendants admit the allegations of ¶9 of the Complaint.

10. Defendants admit the allegations of ¶10 of the Complaint.

**BACKGROUND**

11. With respect to ¶11 of the Complaint, Defendants admit that Plaintiffs' lawsuit asserts contributory, and induced infringement of U.S. Patent Nos. 12,038,247 (the "'247 Patent"), 12,031,784 ("the '784 Patent"), 12,529,538 ("the '538 Patent"), 12,578,159 ("the '159 Patent"), and 12,636,403 ("the '403 Patent) (together, "the Asserted Patents" but deny the lawsuit has merit.

12. With respect to ¶12 of the Complaint, Exhibit A to the Complaint is not a certified copy of the '247 Patent, so Defendants lack knowledge and information sufficient to form a belief

regarding the remaining allegations.

13. With respect to ¶13 of the Complaint, Exhibit B is not a certified copy of the '784 Patent, so Defendants lack knowledge and information sufficient to form a belief regarding the remaining allegations.

14. With respect to ¶14 of the Complaint, Exhibit C is not a certified copy of the '538 Patent, so Defendants lack knowledge and information sufficient to form a belief regarding the remaining allegations.

15. With respect to ¶15 of the Complaint, Exhibit D is not a certified copy of the '159 Patent, so Defendants lack knowledge and information sufficient to form a belief regarding the remaining allegations.

16. With respect to ¶16 of the Complaint, Exhibit E is not a certified copy of the '403 Patent, so Defendants lack knowledge and information sufficient to form a belief regarding the remaining allegations.

17. With respect to ¶17 of the Complaint, Defendants admit that a purported assignment of the Accused Patents to ABC has been recorded at the U.S. Patent and Trademark Office, but Defendants lack knowledge and information sufficient to form a belief regarding the remaining allegations.

18. Defendants lack knowledge or information sufficient to form a belief regarding the allegations of ¶18 of the Complaint.

19. Defendants lack knowledge or information sufficient to form a belief regarding the allegations of ¶19 of the Complaint.

20. Defendants deny the allegations of ¶20 of the Complaint.

**THE INVENTIONS**

21. Defendants admit the allegations of ¶21 of the Complaint.

22. With respect to ¶22 of the Complaint, Defendants admit that the disconnector (in a standard AR-pattern firearm) holds the hammer in a cocked position until the trigger sear can engage the hammer. In a standard semi-automatic AR-pattern firearm (i.e., with no modified or customized components), this prevents the firearm from either firing multiple rounds on a single pull of the trigger or from allowing the hammer to follow the bolt carrier as it returns to battery.

23. With respect to ¶23, of the Complaint, Defendants admit that at least some forced reset trigger designs utilize the cycling bolt carrier to cause the trigger member to be forced to the reset position (even where the user is maintaining and has not released pressure on the trigger).

24. With respect to ¶24 of the Complaint, Defendants admit that the '247 Patent and '159 Patent discloses a device for accelerating the firing sequence of a semi-automatic firearm, where the device can be selected to operate in a standard semi-automatic mode or forced-reset semi-automatic mode. The disclosed device uses a cam (which is a component that the '247 Patent discloses as separate from the selector that selects the mode of operation) that is rotated by movement of the bolt carrier to force the trigger member to reset. The '247 Patent discloses that the device can be used in AR-pattern firearms. However, Defendants deny that the '247 Patent and '159 Patent devices are novel and the remaining allegations.

25. Defendants deny the allegations of ¶25 of the Complaint.

26. With respect to ¶26 of the Complaint, Defendants admit that the '538 Patent

purports to disclose and claim a safety mechanism employing a cam selector, a lever, and a trigger operable among the modes described therein, but deny that those features are novel or non-obvious and deny the remaining allegations.

27. With respect to ¶27 of the Complaint, Defendants admit that the ‘403 Patent purports to disclose and claim a device operable in a standard disconnector semiautomatic mode and a forced-reset semiautomatic mode as described therein but deny that those features are novel or non-obvious and deny the remaining allegations.

28. Defendants admit the allegations of ¶28 of the Complaint.

## THE INFRINGING DEVICES

29. With respect to ¶29 of the Complaint, Defendants deny that it was or is currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Accused Patents.

### I. The Super Safety

30. With respect to ¶30 of the Complaint, Defendants admit that they offer for sale and sell a Super Safety. Defendants deny that the Super Safety embodies the technology claimed in the Accused Patents and the remaining allegations.

31. With respect to ¶31 of the Complaint, Defendants admits that they sell and offer for sale the Super Safety partial and complete kit via their website but deny the remaining allegations.

32. With respect to ¶32 of the Complaint, Defendants admit that they sold a Black rSS kit (A2), a 3 POS push button rSS kit (builders edition), a Black rSS kit w/Flat trigger (A2), and a Polished rSS kit (A2). Defendants deny the remaining allegations.

33. With respect to ¶33 of the Complaint, it is unclear what the referenced “user” is using and what “cam is referenced, so Defendants lack knowledge or information sufficient to form a belief regarding those allegations.

## II. The ARC-Fire

34. With respect to ¶34 of the Complaint, Defendants admit that they offer for sale and sell an ARC-Fire. Defendants deny that the ARC-Fire embodies the technology claimed in the Accused Patents and the remaining allegations.

35. With respect to ¶35 of the Complaint, Defendants admit that they sell and offer for sale an ARC-Fire but deny the remaining allegations.

36. With respect to ¶36 of the Complaint, Defendants admit that they sold an ARC-Fire. Defendants deny the remaining allegations.

37. With respect to ¶37 of the Complaint, it is unclear what the referenced “user” is using and what “cam” is referenced, so Defendants lack knowledge or information sufficient to form a belief regarding those allegations.

## III. The Kabuto

38. With respect to ¶38 of the Complaint, Defendants admit that they offer for sale and sell a Kabuto. Defendants deny that the Kabuto embodies the technology claimed in the Accused Patents and the remaining allegations.

39. With respect to ¶39 of the Complaint, Defendants admit that they sell and offer for sale the Kabuto with certain components via their website but deny the remaining allegations.

40. With respect to ¶40 of the Complaint, Defendants admit that they sold a Kabuto.

Defendants deny the remaining allegations.

41. With respect to ¶41 of the Complaint, it is unclear what the referenced "user" is using and what "cam" is referenced, so Defendants lack knowledge or information sufficient to form a belief regarding those allegations.

**COUNT I – INFRINGEMENT OF THE '247 PATENT**

42. Defendants incorporate by reference the preceding paragraphs as if fully set forth herein.

43. Defendants deny the allegations of ¶43 of the Complaint.

44. Defendants deny the allegations of ¶44 of the Complaint.

45. Defendants deny the allegations of ¶45 of the Complaint.

46. Defendants deny the allegations of ¶46 of the Complaint.

47. Defendants deny the allegations of ¶47 of the Complaint.

48. Defendants deny the allegations of ¶48 of the Complaint.

49. Defendants deny the allegations of ¶49 of the Complaint.

50. Defendants deny the allegations of ¶50 of the Complaint.

51. Defendants deny the allegations of ¶51 of the Complaint.

52. Defendants deny the allegations of ¶52 of the Complaint.

53. Defendants deny the allegations of ¶53 of the Complaint.

54. Defendants deny the allegations of ¶54 of the Complaint.

55. Defendants deny the allegations of ¶55 of the Complaint.

56. Defendants deny the allegations of ¶56 of the Complaint.

57. Defendants deny the allegations of ¶57 of the Complaint.

**COUNT II – INFRINGEMNET OF THE '784 PATENT**

58. Defendants incorporate by reference the preceding paragraphs as if fully set forth herein.

59. Defendants deny the allegations of ¶59 of the Complaint.

60. Defendants deny the allegations of ¶60 of the Complaint.

61. Defendants deny the allegations of ¶61 of the Complaint.

62. Defendants deny the allegations of ¶62 of the Complaint.

63. Defendants deny the allegations of ¶63 of the Complaint.

64. Defendants deny the allegations of ¶64 of the Complaint.

65. Defendants deny the allegations of ¶65 of the Complaint.

66. Defendants deny the allegations of ¶66 of the Complaint.

67. Defendants deny the allegations of ¶67 of the Complaint.

68. Defendants deny the allegations of ¶68 of the Complaint.

69. Defendants deny the allegations of ¶69 of the Complaint.

70. Defendants deny the allegations of ¶70 of the Complaint.

71. Defendants deny the allegations of ¶71 of the Complaint.

72. Defendants deny the allegations of ¶72 of the Complaint.

73. Defendants deny the allegations of ¶73 of the Complaint.

**COUNT III – INFRINGEMENT OF THE '538 PATENT**

74. Defendants incorporate by reference the preceding paragraphs as if fully set forth herein.

75. Defendants deny the allegations of ¶75 of the Complaint.

76. Defendants deny the allegations of ¶76 of the Complaint.

77. Defendants deny the allegations of ¶77 of the Complaint.

78. Defendants deny the allegations of ¶78 of the Complaint.

79. Defendants deny the allegations of ¶79 of the Complaint.

80. Defendants deny the allegations of ¶80 of the Complaint.

81. Defendants deny the allegations of ¶81 of the Complaint.

82. Defendants deny the allegations of ¶82 of the Complaint.

83. Defendants deny the allegations of ¶83 of the Complaint.

84. Defendants deny the allegations of ¶84 of the Complaint.

85. Defendants deny the allegations of ¶85 of the Complaint.

86. Defendants deny the allegations of ¶86 of the Complaint.

87. Defendants deny the allegations of ¶87 of the Complaint.

**COUNT IV – INFRINGEMENT OF THE '159 PATENT**

88. Defendants incorporate by reference the preceding paragraphs as if fully set forth herein.

89. Defendants deny the allegations of ¶89 of the Complaint.

90. Defendants deny the allegations of ¶90 of the Complaint.

91. Defendants deny the allegations of ¶91 of the Complaint.

92. Defendants deny the allegations of ¶92 of the Complaint.

93. Defendants deny the allegations of ¶93 of the Complaint.

94. Defendants deny the allegations of ¶94 of the Complaint.

95. Defendants deny the allegations of ¶95 of the Complaint.

96. Defendants deny the allegations of ¶96 of the Complaint.

97. Defendants deny the allegations of ¶97 of the Complaint.

98. Defendants deny the allegations of ¶98 of the Complaint.

99. Defendants deny the allegations of ¶99 of the Complaint.

100. Defendants deny the allegations of ¶100 of the Complaint.

101. Defendants deny the allegations of ¶101 of the Complaint.

102. Defendants deny the allegations of ¶102 of the Complaint.

103. Defendants deny the allegations of ¶103 of the Complaint.

**COUNT V – INFRINGEMENT OF THE '403 PATENT**

104. Defendants incorporate by reference the preceding paragraphs as if fully set forth

herein.

105. Defendants deny the allegations of ¶105 of the Complaint.

106. Defendants deny the allegations of ¶106 of the Complaint.

107. Defendants deny the allegations of ¶107 of the Complaint.

108. Defendants deny the allegations of ¶108 of the Complaint.

109. Defendants deny the allegations of ¶109 of the Complaint.

110. Defendants deny the allegations of ¶110 of the Complaint.

111. Defendants deny the allegations of ¶111 of the Complaint.

112. Defendants deny the allegations of ¶112 of the Complaint.

113. Defendants deny the allegations of ¶113 of the Complaint.

114. Defendants deny the allegations of ¶114 of the Complaint.

115. Defendants deny the allegations of ¶115 of the Complaint.

116. Defendants deny the allegations of ¶116 of the Complaint.

117. Defendants deny the allegations of ¶117 of the Complaint.

118. Defendants deny the allegations of ¶118 of the Complaint.

119. Defendants deny the allegations of ¶119 of the Complaint.

## **PRAYER FOR RELIEF**

Defendants deny that Plaintiffs are entitled to the relief requested in the Complaint.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim upon which relief can be granted.

2. Defendants have not infringed and do not infringe any valid and enforceable claims of the Accused Patents.

3. The asserted claims of the '247, '784, '538, '159, and the '403 Patents do not meet the statutory requirements of the Patent Act, 35 U.S.C. § 101 et seq., and thus are invalid.

4. The Accused Patents are unenforceable due to inequitable conduct.

5. Plaintiffs have failed to plead and prove compliance with 35 U.S.C. § 287, thus limiting any damages that they may recover.

6. Plaintiffs' claims fail in whole or in part under principles of equity, including, without limitation, because of Plaintiffs' unclean hands and acts done in bad faith.

7. Plaintiffs are not entitled to injunctive relief as they, at minimum, have not suffered any irreparable injury.

8. Defendants' conduct was not the proximate cause of Plaintiffs' alleged damages.

9. Pursuant to Federal Rule of Civil Procedure 11, at the time of the filing of this Answer, all possible affirmative defenses may not have been alleges inasmuch as sufficient facts and other relevant information may not have been available after reasonable inquiry, and therefore Defendants reserve their right to amend this Answer to allege additional affirmative defenses if subsequent investigation warrants the same.

## COUNTERCLAIMS

For its Counterclaims in the above-captioned action, Defendants hereby allege against Plaintiffs as follows:

## PARTIES

1. Mercier & Sons ("Mercier") is a limited liability company owned and operated by Wayne Mercier, organized under the laws of the State of Florida with an address of 826 North Carville Road, Bonifay, Florida 32425.

2. 144.1 Recoil Systems is a sole proprietorship owned and operated by Wayne Mercier, organized under the laws of the State of Florida with an address of 826 North Carville Road, Bonifay, Florida 32425.

3. Upon information and belief, as set forth in ¶1 of the Complaint, ABC IP LLC ("ABC") is a limited liability company having an address in Dover, Delaware.

4. Upon information and belief, as set forth in ¶2 of the Complaint, Rare Breed Triggers, Inc. ("Rare Breed") is a Texas corporation having its principal place of business in Wichita Falls, Texas.

## JURISDICTION

5. This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, 2202, and Title 35 of the U.S. Code.

6. This court has personal jurisdiction over Plaintiffs ABC and Rare Breed because they have submitted themselves to the Court's jurisdiction by filing the instant action, by which they purposefully availed themselves of the benefits and protections of this Court.

## BACKGROUND

7. Plaintiffs ABC and Rare Breed filed this action, accusing Defendants of infringing the '247 Patent (among other patents) through certain products offered for sale by Dogwood. Plaintiffs ABC and Rare Breed assert that the '247 Patent is valid and enforceable.

8. Pursuant to 28 U.S.C. §2201, federal courts are permitted to declare the rights and other legal relations of interested parties seeking such a declaration, upon the filing of an appropriate pleading in a case of actual controversy within its jurisdiction, whether or not further relief is or could be sought.

9. Because Defendants disagree that the '247 Patent is valid and enforceable, an actual and justiciable controversy exists between Defendants and Plaintiffs.

**COUNT I**

**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '247 PATENT**

10. Defendants incorporate by reference the preceding paragraphs as if fully set forth herein.

**Prosecution of the '247 Patent**

11. The '247 Patent issued on application no. 18/325,225 (the "'225 Application"), which was filed May 30, 2023.

12. The '225 Application claimed the benefit of provisional application no. 63/374,941 ("Provisional Application"), which was filed September 8, 2022.

13. The '225 Application included certain disclosure that was not included in the Provisional Application.

14. That disclosure (of the '225 Application that was not included in the Provisional Application) is not entitled to the effective filing date of the Provisional Application.

15. Mr. Glenn D. Bellamy is indicated (on an Electronic Acknowledgement Receipt) as the person who authorized the filing of the Provisional Application and is also indicated (on an

Electronic Payment Receipt) as the person who authorized the payment of the filing fee for the Provisional Application.

16. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the U.S. Patent and Trademark Office ("USPTO"), which includes a duty to disclose to the USPTO all information known to that individual to be material to patentability.

17. One individual to whom such duty applies, with respect to the '247 Patent, is Mr. Bellamy.

18. Mr. Bellamy is indicated (on an Electronic Acknowledgement Receipt) as the person who authorized the filing of the '225 Application.

19. Mr. Bellamy signed the following documents submitted during the prosecution of the '247 Patent: (a) Transmittal for Power of Attorney to One or More Registered Practitioners, identifying himself as the "Attorney of Record"; (b) Application Data Sheet; (c) Patent Assignment Cover Sheet; (d) Comments on Examiner's Reasons for Allowance; and (e) Fee(s) Transmittal form for the issue fee.

20. Mr. Bellamy is also indicated (on Electronic Payment Receipts) as the person who authorized the payment of various fees for the '225 Application.

21. In the Notice of Allowance of the '225 Application, the USPTO Examiner stated that (in his opinion) the closest prior art was U.S. Patent 7,398,723 ("Blakley," attached herein as Exhibit 1). The Examiner also stated that Blakley discloses various claim limitations of the '225 Application, including the "hammer," "trigger member," "disconnector," and "cam" limitations of claims 1, 4, 9, 14, 15 and 20.

22. The Examiner stated that (in his opinion) Blakley does not disclose:

> [a] a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,
>
> [b] whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and
>
> [c] whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time the user can pull said trigger member to fire the firearm without manually releasing said trigger member;
>
> [d] and there is no teaching in the prior art that would have motivated one of ordinary skill in the art to modify Blakley in such a manner.

23. The above-identified portion [a] corresponds to the “safety selector” limitation of claims 1, 4, 9, 14, and 20 of the ‘225 Application.

24. The above-identified portion [b] corresponds to the first “whereupon” limitation (regarding the “standard semi-automatic position”) of claims 1, 4, 9, 14, and 20 of the ‘225 Application.

25. The above-identified portion [c] corresponds to the second “whereupon” limitation (regarding the “forced reset semi-automatic position”) of claims 1, 4, 9, 14, and 20 of the ‘225 Application.

26. However, Mr. Bellamy knew of prior art that disclosed these limitations.

## Tommy Triggers FRT-15-3MD Prior Art

27. Such prior art includes a trigger assembly sold by Mr. Mladen Thomas Strbac (d/b/a Tommy Triggers) called the FRT-15-3MD.

28. Tommy Triggers was selling the FRT-15-3MD as early as January 17, 2022.

29. Mr. Bellamy was aware of the FRT-15-3MD because he signed and filed an infringement complaint against Mr. Strbac/Tommy Triggers on behalf of ABC and Rare Breed on February 21, 2022. *See Rare Breed Triggers, LLC v. Strbac*, No. 1:22-cv-280 (N.D. Ohio) (ECF No. 1, "Strbac Complaint," attached herein as Exhibit 2). That complaint describes and includes several photos of the FRT-15-3MD. That complaint includes, as an exhibit, a cease-and-desist letter dated January 17, 2022, signed by Mr. Bellamy and sent to Tommy Triggers regarding that trigger assembly.

30. Some of the photos of the FRT-15-3MD from the Strbac Complaint are shown below:


FORCED RESET
TRIGGER
FRT-15-3MD
Made in the USA
FRT-15-3MD
USA
TOMMY
FORCED RESET
TRIGGER
FRT-15-3MD
Made in the USA
FRT-15-3MD
USA
TOMMY


FRT-15-3MD
USA
TOMMY
TRIGGERS


FRT-15-3MD
USA
TOMMY
TRIGGERS




Transversely aligned pairs of openings
FRT-15-3MD
Housing
USA
TOMMY
TRIGGERS







31. The FRT-15-3MD was in public use, on sale, or otherwise available to the public before the ‘225 Application was filed.

32. The FRT-15-3MD was in public use, on sale, or otherwise available to the public before the Provisional Application was filed.

33. The FRT-15-3MD qualifies as prior art to the ‘247 Patent under 35 U.S.C. §102(a)(1).

**Rare Breed FRT-15E3 Prior Art**

34. The Strbac Complaint also states that on January 15, 2022, Plaintiffs publicly demonstrated a three-position forced-reset trigger in which a safety selector switch can change the mode of operation between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with locking bar modes. That complaint refers to this three-position trigger as the FRT-15E3 and shows a photo of it:




35. A video of Mr. Lawrence DeMonico, Rare Breed's President, demonstrating a firearm with the FRT-15E3 was uploaded to YouTube on January 15, 2022, at https://www.youtube.com/watch?v=ZJ0lWi2kfC0. The video confirms details about the FRT-15E3.

36. The FRT-15E3 was disclosed to the public before the '225 Application was filed.

37. The FRT-15E3 was disclosed to the public before the Provisional Application was filed.

38. The FRT-15E3 qualifies as prior art to the '247 Patent under 35 U.S.C. §102(a)(1).

39. The Strbac Complaint discloses (in ¶38) that a firearm with the FRT-15E3 has a safety selector (that would be mounted in the fire control mechanism pocket) that can switch between safe, standard semiautomatic, and forced-reset semiautomatic modes. This disclosure of a three-position safety selector used with a forced-reset trigger directly meets portion [a] of what the Examiner found missing from the cited prior art in ¶24 above.

40. The Strbac Complaint discloses (in ¶¶27, 29, 38, 45) that a firearm with the FRT-

15E3 can operate in a standard semiautomatic with disconnector mode, which is much like that of a standard AR-15 trigger. In that standard semiautomatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. This disclosure of a standard semiautomatic mode meets portion [b] of what the Examiner found missing from the cited prior art in ¶24 above.

41. The Strbac Complaint discloses (in ¶¶35–36, 38, 45) that a firearm with the FRT-15E3 can operate in forced-reset mode, like the FRT-15 model also described in that complaint. In that mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer, but the FRT-15E3 prevents the disconnector hook from catching the hammer hook. Thereafter, the bolt carrier moves forward into battery, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member. This disclosure of a forced-reset semiautomatic mode meets portion [c] of what the Examiner found missing from the cited prior art in ¶24 above.

42. A POSA would thus have been motivated to modify Blakley's trigger mechanism to include a three-position safety selector as taught by the FRT-15E3 to allow the firearm to operate in each of three modes (safe, standard semiautomatic, and forced-reset semiautomatic).

43. Had the Examiner been aware of the FRT-15E3, he would have rejected at least pending claims 1, 4, 9, 14, and 20 of the '225 Application under 35 U.S.C. §103 in light of Blakley and the FRT-15E3.

44. Therefore, the FRT-15E3 was material to the patentability of at least claims 1, 4, 9, 14, and 20 of the ‘225 Application and should have been disclosed to the USPTO.

45. Neither ABC generally nor Mr. Bellamy specifically disclosed the FRT-15E3 to the USPTO during prosecution of the ‘225 Application.

46. While direct evidence of Mr. Bellamy’s state of mind is solely within his control, the information available to Defendants supports the inference that Mr. Bellamy intentionally withheld the FRT-15E3 from the USPTO in an attempt to obtain allowance of the ‘225 Application and issuance of the ‘247 Patent.

47. Mr. Bellamy was well-aware of the FRT-15E3 because he discussed and showed it in the Strbac Complaint in early 2022.

48. Mr. Bellamy was aware that the FRT-15E3 discloses limitations that the Examiner believed were missing from Blakley. Mr. Bellamy thus realized that, if the FRT-15E3 were disclosed to the USPTO, the Examiner would reject the pending claims. Mr. Bellamy deliberately and intentionally withheld the FRT-15E3 from the USPTO in an effort to deceive the USPTO into issuing an invalid patent.

**<u>The ‘247 Patent is Unenforceable</u>**

49. Mr. Bellamy’s intentional withholding of at least the above material references during prosecution of the ‘225 Application is inequitable conduct that renders all claims of the resulting ‘247 Patent unenforceable.

50. Defendants thus request a declaration from this Court that the ‘247 Patent is unenforceable.

**COUNT II**

**DECLARATORY JUDGEMENT OF INVALIDITY OF THE '247 PATENT**

51. Defendants incorporate by reference the preceding paragraphs as if fully set forth herein.

52. Plaintiffs asserted claim 15 of the '247 Patent, which claims a firearm trigger mechanism comprising:

> a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,
>
> a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,
>
> wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,
>
> said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and
>
> a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position,
>
> whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and
>
> whereupon in a forced reset semi-automatic mode, said cam is in said second

> position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

53. Blakley (U.S. Patent 7,398,723) issued July 15, 2008, and is thus prior art to the '247 Patent under 35 U.S.C. §102(a)(1) and (2).

54. As explained in Count I above, the Tommy Triggers FRT-15-3MD is also prior art to the '247 Patent.

55. At least claim 15 of the '247 Patent is invalid under at least 35 U.S.C. §103 over at least Blakley and the FRT-15-3MD.

56. Blakley discloses a firearm trigger mechanism. (Figs. 1–5, 4:37–43.) The FRT-15-3MD is also a firearm trigger mechanism.

57. Blakley discloses a hammer 56 having a sear catch 52 and a hook 54 for engaging a disconnector 38 and adapted to be mounted in a fire control mechanism pocket of a receiver 16 to pivot on a transverse hammer pivot axis 58 between set (Fig. 3) and released (Fig. 1) positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier. (Figs. 1–3, 5, 2:32–48, 4:12–15, 5:44–59, 10:34–38.) As shown above, the FRT-15-3MD also has a hammer having a sear catch and a hook for engaging a disconnector, adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier.

58. Blakley discloses a trigger member (combination of 22 and 90) having a sear 34 and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger

member pivot axis 46 between set (Fig. 3) and released (Fig. 1) positions. (Figs. 1–5, 2:1–15, 2:23–26, 3:10–20, 5:13–27, 5:35–38, 6:22–32, 8:30–34, 10:34–47.) The FRT-15-3MD also has a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions.

59. Blakley discloses that the sear 34 and the sear catch 52 are in engagement in the set positions (Fig. 3) of the hammer 56 and the trigger member (22 and 90) and are out of engagement in the released positions (Fig. 1) of the hammer and the trigger member. (Figs. 1–3, 2:37–38, 5:49–50, 10:47–50.) Also, the FRT-15-3MD's sear and sear catch are in engagement in the set positions of the hammer and the trigger member and are out of engagement in the released positions of the hammer and the trigger member.

60. Blakley discloses the disconnector 38 having a hook 44 for engaging the hammer 54 and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis 40, 46. (Figs. 1–3, 5, 2:16–26, 5:28–38, 6:55–65, 10:34–38.) The FRT-15-3MD's disconnector also has a hook for engaging the hammer and is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis.

61. Blakley discloses a cam 66 having a cam lobe 69 and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position (e.g., Fig. 1) and a second position (Fig. 2), where in the second position the cam lobe forces the trigger member (90 and 22) towards the set position. (Figs. 1–5, claim 1, 2:49–3:2, 3:10–20, 4:40–43, 5:60–6:14, 6:22–32, 7:19–38, 7:46–53, 10:34–11:25.) Similarly, the FRT-15-3MD's trigger member is also forced towards the set position by having an upper portion of the trigger member be pressed downwards.

62. Blakley discloses a safety selector 82 that is movably mounted in the fire control mechanism pocket and moves between several modes, including forced-reset semiautomatic mode, standard semiautomatic mode, and safe, as would be understood by a POSA. (Figs. 1–5, 3:3–9, 6:15–21, 7:39–45, 11:11–29.) The FRT-15-3MD also has a safety selector that is movably mounted in the fire control mechanism pocket and moves between safe, standard semiautomatic, and forced-reset semiautomatic modes.

63. Blakley discloses that its firearm can operate in forced-reset semiautomatic mode, where the cam 66 is in the second position (e.g., Fig. 2), rearward movement of the bolt carrier causes rearward pivoting of the hammer 56, and thereafter the bolt carrier moves forward into battery, at which time the user can pull the trigger member (22 and 90) to fire the firearm. (Figs. 2–3, 5, claim 1, 1:7–10, 1:54–60, 4:40–43, 6:33–36, 7:54–8:43, 10:12–24, 10:34–11:30.)

64. The FRT-15-3MD can also operate in forced-reset semiautomatic mode, where rearward movement of the bolt carrier causes rearward pivoting of the hammer, and thereafter the bolt carrier moves forward into battery, at which time the user can pull the trigger member to fire the firearm. The FRT-15-3MD's disconnector has a tail extending toward the safety selector. When the FRT-15-3MD's safety selector is in the forced-reset mode, the safety selector pushes down on the disconnector tail to prevent the disconnector hook from catching the hammer hook.

65. It would be obvious to a POSA to modify Blakley's disconnector to include a tail (as in the FRT-15-3MD and many other AR-pattern disconnectors). Such a disconnector would be prevented from having its hook catch the hammer hook in forced-reset semiautomatic mode to ensure that it does not interfere with the increased firing rate.

66. Blakley discloses that its firearm can operate in standard semi-automatic mode (by

disabling the forced-reset effect), where the cam 66 is in the first position (e.g., Fig. 3), rearward movement of the bolt carrier causes rearward pivoting of the hammer 56 such that the disconnector hook 44 catches the hammer hook 54, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release the trigger member (22 and 90) to free the hammer from the disconnector 38 to permit the hammer and the trigger member to pivot to the set positions (Fig. 3) so that the user can pull the trigger member to fire the firearm. (Figs. 1, 3–5, 10:34–38, 10:46–47, 10:55–58, 11:11–29.) The FRT-15-3MD can also operate in standard semiautomatic mode, where rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and the trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.

67. Throughout discovery, Defendants are likely to identify additional invalid claims, additional prior art, and additional invalidity grounds.

68. Defendants thus request a declaration from this Court that the ‘247 Patent is invalid.

## **DEMAND FOR JURY TRIAL**

Defendants hereby demand a trial by jury on all issues so triable.

Dated: August 11, 2026

Respectfully submitted,

*/s/John M. Skeriotis*
John M. Skeriotis (Ohio Bar #0069263)
jms@etblaw.com
Sergey Vernyuk (Ohio Bar #0089101)
sv@etblaw.com

**EMERSON, THOMSON & BENNETT, LLC**
1914 Akron-Peninsula Road
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile

*Attorneys for Defendants*