**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176** |
| ABC IP, LLC, RARE BREED TRIGGERS, INC., and RBTM LLC, a Wyoming limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MERCIER AND SONS, LLC, WAYNE MERCIER, d/b/a 144.1 RECOIL SYSTEMS, and SAMANTHA MERCIER,<br><br>Defendants. | Civil Action No. 4:26-cv-01030-ALM<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND TRADEMARK INFRINGEMENT**

This is an action for patent infringement, trademark infringement, and unfair competition in which ABC IP LLC ("ABC"), Rare Breed Triggers, Inc. ("Rare Breed"), and RBTM LLC ("RBTM") (collectively, "Plaintiffs") accuse Mercier and Sons, LLC ("Mercier"), 144.1 Recoil Systems ("144.1 Recoil"), Wayne Mercier ("Mr. Mercier"), and Samantha Mercier ("Ms. Mercier") (collectively, "Defendants"), of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,529,538, 12,578,159, and 12,636,403; infringing Plaintiffs' trademark rights; and engaging in unfair competition, as follows:

## I. PLAINTIFFS

1. ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2. Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, Texas 76306.

3. RBTM is a limited liability company organized under the laws of the State of Wyoming with an address at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801. RBTM is a Plaintiff only on the trademark counts.

## II. DEFENDANTS

4. Upon information and belief, Mercier is a limited liability company owned and operated by Wayne Mercier, organized under the laws of the State of Florida with an address of 826 North Caryville Road, Bonifay, Florida 32425.

5. Upon information and belief, 144.1 Recoil is a sole proprietorship owned and operated by Wayne Mercier under the laws of the State of Florida with an address of 826 North Caryville Road, Bonifay, Florida 32425.

6. Upon information and belief, Mr. Mercier is an individual residing at 826 North Caryville Road, Bonifay, Florida 32425, who directs and controls the decisions of Mercier and his sole proprietorship 144.1 Recoil to sell products that he knew or should have known infringe the Patents-in-Suit.

7. Upon information and belief, Ms. Mercier is an individual residing at 826 North Caryville Road, Bonifay, Florida 32425, who is the manager of Mercier and directs and controls the operations of Mercier and 144.1 Recoil to sell products that she knew or should have known infringe the Patents-in-Suit.

## III. JURISDICTION

8. This Court has subject-matter jurisdiction over the patent claims under 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has subject-matter jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and over the related common-law claims under 28 U.S.C. §§ 1338(b) and 1367(a).

10. Plaintiffs filed this action in the United States District Court for the Northern District of Florida ("the Transferor Court"), No. 5:26-cv-00156, and the Judicial Panel on Multidistrict Litigation transferred it to this Court under 28 U.S.C. § 1407 for coordinated pretrial proceedings. Personal jurisdiction and venue are therefore pleaded as to the transferor court.

11. Personal jurisdiction over Defendants is proper in the Transferor Court because Defendants reside in and have a regular and established place of business in that District. Defendants have admitted the allegations of this paragraph as pleaded in the Transferor Court. Dkt. 15 ¶ 9.

12. Venue is proper in the Transferor Court pursuant to 28 U.S.C. § 1400(b). Defendants reside in or have committed acts of infringement and have a regular and established place of business in that District. Defendants have admitted the allegations of this paragraph as pleaded in the Transferor Court. Dkt. 15 ¶ 10.

## IV. THE PATENTS-IN-SUIT

13. Plaintiffs assert the patents listed below (the "Patents-in-Suit"). Each is referred to by the last three digits of its number (for example, U.S. Patent No. 12,038,247 is the "'247 patent"). A copy of each is attached as the exhibit shown.

| Ex. | Patent | U.S. Patent No. | Title | Issued |
|---|---|---|---|---|
| A | ’247 | 12,038,247 | Firearm Trigger Mechanism | July 16, 2024 |
| B | ’784 | 12,031,784 | Adapted Forced Reset Trigger | July 9, 2024 |
| C | ’538 | 12,529,538 | Safety Mechanism for Firearm | Jan. 20, 2026 |
| D | ’159 | 12,578,159 | Firearm Trigger Mechanism | Mar. 17, 2026 |
| E | ’403 | 12,636,403 | Firearm Trigger Mechanism | May 26, 2026 |

14. Each Patent-in-Suit was duly and legally issued by the United States Patent and Trademark Office and is presumed valid. 35 U.S.C. § 282.

**Ownership and license**

15. ABC owns all right, title, and interest in and to the Patents-in-Suit. ABC holds them by assignment recorded at the United States Patent and Trademark Office, or as the original applicant, as shown below:

| Patent | U.S. Patent No. | Title | Assignment Reel/Frame |
|---|---|---|---|
| ’247 | 12,038,247 | Firearm Trigger Mechanism | 63791/0546 |
| ’784 | 12,031,784 | Adapted Forced Reset Trigger | 61657/0550 |
| ’538 | 12,529,538 | Safety Mechanism for Firearm | 72845/0001 |
| ’159 | 12,578,159 | Firearm Trigger Mechanism | Appl. filed by ABC IP LLC |
| ’403 | 12,636,403 | Firearm Trigger Mechanism | Appl. filed by ABC IP LLC |

16. Rare Breed is the exclusive licensee of the Patents-in-Suit.

**Marking**

17. Rare Breed sells various products that practice the Patents-in-Suit, including the following:

| RBT Product | Platform | Patent(s) |
|---|---|---|
| FRT-15L3® | AR-15 | ’403 |
| FRT-15L3® (Flat) | AR-15 | ’403 |
| FRT-15L3® (MIL) | AR-15 | ’403 |
| FRT-15C3® | AR-15 | ’247, ’159, ’403 |
| FRT-15C3® (Flat) | AR-15 | ’247, ’159, ’403 |
| FRT-MR3™ | AR-15 (piston-driven) | ’403 |

| | | |
|---|---|---|
| FRT-MR3™ (Flat) | AR-15 (piston-driven) | ’403 |
| FRT-MR3™ (MIL) | AR-15 (piston-driven) | ’403 |
| FRT-RD3™ (SEF) | HK MP5/SP5 | ’403 |
| FRT-RD3™ (AMBI) | HK MP5/SP5 | ’403 |
| FRT-AP3™ | B&T APC9/APC40 | ’247, ’159, ’403 |
| FRT-SG3™ | B&T SPC9/SPC45/GHM9/GHM45 | ’247, ’159, ’403 |
| FRT-22® | Ruger® 10/22® | ’403 |

18. Each of the above products is physically marked with the following: “PATENTS: RBTPATENTS.COM.”

19. RBTPatents.com routes consumers to Rare Breed’s website, https://rarebreedtriggers.com/patents, which informs consumers that Rare Breed’s products are protected in the United States by one or more patents owned by ABC IP, LLC. The website identifies which patents are practiced by each of Rare Breed’s products.

20. Accordingly, to the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the Patents-in-Suit.

## V. FORCED RESET TRIGGER TECHNOLOGY

21. A typical AR-15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a standard disconnector AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector, and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position.

When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

22. In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

23. In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt mechanically moves the trigger member to the reset position and holds it there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

## VI. THE PATENTED INVENTIONS

24. The '247 and '159 patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a "forced reset" semiautomatic mode and uses a cam, rotated by cycling of the action, to cause the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

25. The '784 patent provides a device that works in a trigger system as an extended trigger member locking mechanism for use with a semiautomatic firearm that employs, in some

embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 patent overcome the geometric limitations of prior art designs for use in multiple and varied semiautomatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

26. The '538 patent provides a safety mechanism for a firearm that employs a cam selector, a lever, and a trigger. The cam selector contains multiple recesses and is configured to operate between a first mode, a second mode, and a third mode. In the first mode, a portion of the trigger referred to as a first trigger tail portion is movable within the first recess. In the second mode, the first trigger tail portion is allowed to engage the second recess and be moved down by a cam portion of the second recess when the cam selector rotates. In the third mode, the cam selector is configured to prevent the trigger from being pulled.

27. The '403 patent describes and claims a device that can be selected to operate in either of two distinct modes: (1) standard disconnector semiautomatic mode and (2) "forced reset" semiautomatic mode.

28. The claims of the Patents-in-Suit define the scope of the patented inventions.

## VII. THE ACCUSED PRODUCT FAMILIES

29. The accused products fall into three product families. A family is defined by the design and operation of its fire-control mechanism, not by its maker or seller. Products in a family operate the same way in the respects the asserted claims address, whether sold as a complete unit, a kit, a part, or installed in a lower receiver. Differences among the products in a family, such as branding, labeling, color, finish, material, method of manufacture, packaging, an ambidextrous selector, or an external housing, do not affect any element of the asserted claims.

In this Complaint, the "user" is the person operating a firearm in which a family product is installed.

30. On information and belief, Defendants are making, using, selling, and/or offering for sale products that embody the technology claimed in the Patents-in-Suit, including the Super Safety, the ARC-Fire, and the Kabuto described below (collectively, the "Accused Products").

| Family | What it is | Patents asserted | Charts |
|---|---|---|---|
| Super Safety | Three-position cam safety selector, sold as a partial or complete kit, with other firearm parts, or installed. | '247, '784, '538, '159, '403 | K-1 to K-5 |
| ARC-Fire | Three-position forced reset selector, sold alone, with other firearm parts, or installed. | '247, '784, '159, '403 | K-11 to K-14 |
| Kabuto | Three-position forced reset device whose cam moves a trigger member through a separate cam follower. | '247, '784, '159, '403 | K-21 to K-24 |

### The Super Safety family

31. The Super Safety family includes the (3-Position) "Super Safety" and every product of the same design and operation, whatever its maker or name. A Super Safety uses a specially made cam and cam lever that replace a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam.

32. On information and belief, Defendants are making, using, selling, and/or offering for sale Super Safety family products in multiple variants, including at least: (a) a complete assembly, which includes at minimum the cam and cam lever components, which when installed in combination with a standard AR-pattern hammer, disconnector, springs, and a modified trigger, infringes the claims of the '247, '784, '538, '159, and '403 patents; (b) as a kit, which includes at minimum the complete assembly and may further include one or more additional components (e.g., a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger); (c) a complete assembly pre-installed in a lower receiver, grip, fire control group, or

firearm; (d) components and replacement parts of the complete assembly; and (e) parts specially designed solely for use with the complete assembly (e.g., modified triggers or trigger cutting jigs).

33. On information and belief, Defendants make, use, sell, and/or offer for sale the Super Safety through the website www.1441recoilsystems.com. Exemplary photographs are shown below:












34. A Super Safety can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by moving the safety selector laterally between positions.

35. Plaintiffs assert the '247, '784, '538, '159, and '403 patents against the Super Safety family.

**The ARC-Fire family**

36. The ARC-Fire family includes the Three-Position ARC-Fire trigger device (the "ARC-Fire"), including the ARHK, which incorporates an ARC-Fire within an additional housing, and every product of the same design and operation, whatever its maker or name.

37. On information and belief, Defendants are making, using, selling, and/or offering for sale ARC-Fire family products in multiple variants, including at least: (a) a complete assembly, which includes at minimum the cam and cam lever components, which when installed in combination with a standard AR-pattern hammer, disconnector, springs, and trigger, infringes the claims of the '247, '784, '159, and '403 patents; (b) as a kit, which includes at minimum the complete assembly and may further include one or more additional components (e.g., a standard

AR-pattern hammer, disconnector, and standard springs); (c) a complete assembly pre-installed in a lower receiver, grip, fire control group, or firearm; (d) components and replacement parts of the complete assembly; and (e) parts specially designed solely for use with the complete assembly (e.g., lever blockers).

38. On information and belief, Defendants make, use, sell, and/or offer for sale the ARC-Fire through the website www.1441recoilsystems.com. An exemplary photograph is shown below:




39. An ARC-Fire can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic ("Active Reset Clutch" or "ARC") with cam modes by rotating the safety selector between positions.

40. Plaintiffs assert the '247, '784, '159, and '403 patents against the ARC-Fire family.

**The Kabuto family**

41. The Kabuto family includes the "Kabuto," products of that design sold as the VxR FRD, ARSS15, Mini K, FRB, and Drop-In FRD, and every product of the same design and

operation, whatever its maker or name. In a Kabuto, the cam of the safety selector moves the trigger member toward the set position through a separate cam follower.

42. On information and belief, Defendants are making, using, selling, and/or offering for sale Kabuto family products in multiple variants, including at least: (a) a complete assembly, which includes at minimum the cam and cam follower components, which when installed in combination with a standard AR-pattern hammer, disconnector, springs, and trigger, infringes the claims of the ’247, ’784, ’159, and ’403 patents; (b) as a kit, which includes at minimum the complete assembly and may further include one or more additional components (e.g., a modified selector); (c) a complete assembly pre-installed in a lower receiver, grip, fire control group, or firearm; (d) components and replacement parts of the complete assembly; and (e) parts specially designed solely for use with the complete assembly, such as modified selectors.

43. On information and belief, Defendants make, use, sell, and/or offer for sale the Kabuto through the website https://1441recoilsystems.com/?s=Kabuto, in at least a partial kit, which includes at minimum the cam and cam lever components and may further include one or more additional components (when these components are installed in combination with a standard AR-pattern hammer and disconnector and standard springs, the combination creates the inventions of the ’247, ’784, ’159, and ’403 patents). An exemplary photograph is shown below:




44. A Kabuto can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by rotating the safety selector between positions.

45. Plaintiffs assert the '247, '784, '159, and '403 patents against the Kabuto family.

## Claim charts

46. The claim charts listed below, attached as the exhibits shown, compare a representative claim of each Patent-in-Suit to each family against which it is asserted. Each chart shows how a family product meets each limitation when assembled and used as intended.

| Ex. | Family | Patent | Claim |
|---|---|---|---|
| K-1 | Super Safety | '247 | 15 |
| K-2 | Super Safety | '784 | 1 |
| K-3 | Super Safety | '538 | 1 |

| Ex. | Family | Patent | Claim |
|---|---|---|---|
| K-4 | Super Safety | ’159 | 1 |
| K-5 | Super Safety | ’403 | 38 |
| K-11 | ARC-Fire | ’247 | 15 |
| K-12 | ARC-Fire | ’784 | 1 |
| K-13 | ARC-Fire | ’159 | 1 |
| K-14 | ARC-Fire | ’403 | 38 |
| K-21 | Kabuto | ’247 | 15 |
| K-22 | Kabuto | ’784 | 1 |
| K-23 | Kabuto | ’159 | 1 |
| K-24 | Kabuto | ’403 | 38 |

**Asserted claims**

47. Plaintiffs assert the claims listed below.

| Asserted Patent | Accused Product Family | Asserted Claims |
|---|---|---|
| ’247 Patent | Super Safety Family | 15, 17–20, 23 |
| ’247 Patent | ARC-Fire Family | 15, 17–20, 23 |
| ’247 Patent | Kabuto Family | 15 |
| ’784 Patent | Super Safety Family | 1, 3, 4 |
| ’784 Patent | ARC-Fire Family | 1, 4 |
| ’784 Patent | Kabuto Family | 1–4 |
| ’538 Patent | Super Safety Family | 1–13 |
| ’159 Patent | Super Safety Family | 1, 3–17 |
| ’159 Patent | ARC-Fire Family | 1, 3–17 |
| ’159 Patent | Kabuto Family | 1, 3–17 |
| ’403 Patent | Super Safety Family | 14–29, 32, 35–39, 53 |
| ’403 Patent | ARC-Fire Family | 14–30, 32, 35–39, 53–55 |
| ’403 Patent | Kabuto Family | 14–30, 32, 35–39, 53–55 |

## VIII. INFRINGEMENT THEORIES

48. **Direct infringement.** A Defendant that, without authority, makes, uses, sells, offers to sell, or imports into the United States a family product directly infringes the asserted claims of a Patent-in-Suit asserted against that family, literally or under the doctrine of equivalents. 35 U.S.C. § 271(a).

49. **Assembled use.** Many family products are sold as kits or parts that the buyer installs in an AR-15-pattern lower receiver. When assembled and used as intended, as the seller's instructions direct, the resulting fire-control mechanism practices asserted claims, as the claim charts show. A Defendant that assembles, installs, tests, or demonstrates family products, including by installing them in its customers' firearms, itself makes and uses the claimed inventions and directly infringes. 35 U.S.C. § 271(a).

50. **Induced infringement.** A Defendant that knows of a Patent-in-Suit and, intending that customers infringe it, provides instructions, installation guides, videos, compatibility statements, or marketing that leads customers to assemble and use family products as claimed, induces infringement. 35 U.S.C. § 271(b).

51. **Contributory infringement.** A Defendant that sells, offers to sell, or imports a component of a family product, such as a cam, reset or transfer lever, lever arm, selector, or cassette or housing assembly, or a family product sold as a kit for assembly, contributes to infringement of a Patent-in-Suit when the component constitutes a material part of the invention and the Defendant knows it to be especially made or especially adapted for use in an infringement of that patent. 35 U.S.C. § 271(c). These components are not staple articles or commodities of commerce suitable for substantial noninfringing use: they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the Patents-in-Suit.

52. **Individuals: personal participation.** An individual who personally takes part in infringing acts, for example by designing, making, promoting, or selling family products, is liable for that direct infringement whatever the individual's position in a company.

53. **Individuals: inducement.** An individual who knows of a Patent-in-Suit and actively and knowingly aids and abets a company's infringement, for example by directing the company to keep making and selling family products after learning of the patent, induces infringement. 35 U.S.C. § 271(b).

**Defendants' inducing and contributing acts**

54. On information and belief, in addition to their direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the Patents-in-Suit, knowing that those steps will induce, encourage, and facilitate direct infringement by others. Those steps include installation of, encouraging, advertising, promoting, and instructing others to use, and how to use, the Super Safety, the ARC-Fire, and the Kabuto.

55. On information and belief, Defendants know or should know that these activities induce others to directly infringe the Patents-in-Suit.

56. On information and belief, Defendants also contribute to the infringement of the Patents-in-Suit by others, including their customers, by selling, offering for sale, and/or importing components of the Accused Products, such as the cam or cam lever arm. Those components are not suitable for substantial noninfringing use because they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the Patents-in-Suit.

57. On information and belief, Mr. Mercier, who owns and operates Mercier and 144.1 Recoil, directs and controls their decisions to sell the Accused Products. On information and belief, Ms. Mercier, who is the manager of Mercier, directs and controls the operations of Mercier and 144.1 Recoil to sell the Accused Products. Mr. Mercier and Ms. Mercier have each personally participated in, directed, and benefited from the making, selling, and promotion of the Accused Products.

## IX. NOTICE, KNOWLEDGE, AND WILLFULNESS

58. Defendants have engaged in egregious infringement behavior with knowledge of the Patents-in-Suit, which have been duly issued by the USPTO and are presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the Patents-in-Suit at least through service of the original Complaint on June 30, 2026. Despite that knowledge and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities.

59. Each Defendant has known of each Patent-in-Suit asserted against it, in any event, since service of the first complaint that asserted that patent against it.

60. A Defendant that, after learning of a Patent-in-Suit and how its products are accused of infringing it, continues to make, sell, or promote those products infringes willfully. Plaintiffs seek enhanced damages under 35 U.S.C. § 284 against that Defendant.

61. Plaintiffs' damages run from the earlier of the date Plaintiffs' marking began under 35 U.S.C. § 287(a), *see* ¶¶ 17–20, and the date of actual notice to the Defendant, including notice by the filing of suit.

## X. THE FRT® MARKS

62. RBTM owns the FRT® trademark and its variations, the registrations and applications listed below, and the common-law rights in those marks (together, the "FRT® marks"). ABC assigned the registrations and applications, with their goodwill, to RBTM by an assignment executed May 26, 2026, and submitted to the United States Patent and Trademark Office for recording on June 11, 2026 (Assignment IDs 1867613 and 1867473). Rare Breed is the exclusive licensee of the FRT® marks, with the right to enforce them.

63. The following FRT® marks are registered with the United States Patent and Trademark Office for triggers for firearms (the "Registered FRT® Marks"):

| **Mark** | **Reg. No.** | **Registered** | **Serial No.** | **Assignment to RBTM LLC** |
|---|---|---|---|---|
| FRT® | 8,187,914 | Mar. 24, 2026 | 97248519 | Reel: 009301, Frame: 0033 |
| FRT-15® | 7,004,418 | Mar. 21, 2023 | 97245949 | Reel: 009301, Frame: 0033 |
| FRT-22® | 8,232,406 | Apr. 28, 2026 | 97248530 | Reel: 009301, Frame: 0033 |
| FRT-47® | 8,232,405 | Apr. 28, 2026 | 97248528 | Reel: 009301, Frame: 0033 |
| FRT-15L3® | 8,225,451 | Apr. 21, 2026 | 98715335 | Reel: 009301, Frame: 0033 |
| FRT-15C3® | 8,369,662 | July 28, 2026 | 98715353 | Reel: 009300, Frame: 0614 |

64. RBTM also owns the following applications to register marks for triggers for firearms:

| **Mark** | **Serial No.** | **Status** | **Assignment to RBTM LLC** |
|---|---|---|---|
| FRT-MR3™ | 99714625 | Pending | Reel: 009300, Frame: 0614 |
| FRT-RD3™ | 99714703 | Pending | Reel: 009300, Frame: 0614 |

65. Since at least 2020, the FRT® mark has been used by Rare Breed to identify a unique trigger for firearms, which has been a remarkably successful offering. As a result of the long-term and high-profile use, the FRT® mark has come to be uniquely identified with Rare Breed and is a valuable identifier of Rare Breed's products.

66. The FRT® marks are inherently distinctive and have acquired significant goodwill in the marketplace through Plaintiffs' continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT® marks have become uniquely associated in the minds of consumers and the trade with Plaintiffs.

67. The reputation Plaintiffs have built in the FRT® marks is of great value to Plaintiffs.

68. A product that does not originate with Plaintiffs is not a Rare Breed FRT® product, whatever its seller calls it. A seller's unauthorized use of the FRT® marks to identify

and promote its products is likely to mislead consumers into believing that the seller's products are Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

69. Defendants advertise their products as "FRT" on the website www.1441recoilsystems.com. For example, at https://1441recoilsystems.com/product/the-a10-2-0/, Defendants offer "The A10 2.0 One-Piece Stainless FRT Trigger — Glonk & Clone Compatible"; at https://1441recoilsystems.com/product/v2-flat-suregrip-316-kit/, Defendants' product page states that "the FRT works fine without" an optional slide-release swap and that this "does not affect the function of the FRT itself"; and at https://1441recoilsystems.com/product/science-sauce/, Defendants advertise a lubricant as "FRT rated and tested." Exemplary images are shown below:

The A10 2.0
https://1441recoilsystems.com/product/the-a10-2-0/
2026-11-14 01:42:24 UTC / 7:42:24 PM CT

The A10 2.0 One-Piece Stainless FRT Trigger — Glonk & Clone Compatible

V2 Flat SureGrip (polished 316 kit)
https://1441recoilsystems.com/product/v2-flat-suregrip-316-kit/
2026-11-14 01:42:30 UTC / 7:42:30 PM CT

To keep slide-release functionality, you'll need to swap in an older-style slide release (such as a Glock 19 Gen 3 release). This swap is optional, as the FRT works fine without it.

V2 Flat SureGrip (polished 316 kit)
https://1441recoilsystems.com/product/v2-flat-suregrip-316-kit/
2026-11-14 01:42:30 UTC / 7:42:30 PM CT

The factory 5th gen slide release will not function with this system. To retain slide-release functionality, swap it out for an older-generation release. This does not affect the function of the FRT itself, so leaving the slide release out is also an option.

Science Sauce
https://1441recoilsystems.com/product/science-sauce/
2026-11-14 01:42:33 UTC / 7:42:33 PM CT

Science Sauce is engineered for guns that run hard and fast—especially those with a taste for rapid fire. FRT rated and tested, this high-performance formula reduces friction, resists heat, and keeps your firearm running smooth under serious stress. Built for the sake of science, trusted when speed matters most.

70. Despite Mercier's marketing, Mercier's products are not one of Plaintiffs' FRT products.

71. Mercier's unauthorized use of the FRT® marks to identify and promote its products is likely to mislead consumers into falsely believing that Mercier's products are in fact Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

72. The only reason Mercier would use the FRT® marks in connection with its products is to trade on the goodwill Plaintiffs have developed in the FRT® marks, and thus Mercier's conduct is willful.

## XI. CLAIMS FOR RELIEF

### COUNT I: INFRINGEMENT OF THE '247 PATENT (U.S. PATENT NO. 12,038,247)

73. Plaintiffs incorporate the paragraphs of §§ I–IX.

74. Defendants have infringed and continue to infringe at least claim 15 of the '247 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety, ARC-Fire, and Kabuto families, in violation of 35 U.S.C. § 271(a).

75. Defendants have also induced infringement of the '247 patent in violation of 35 U.S.C. § 271(b).

76. Defendants have contributed to infringement of the '247 patent in violation of 35 U.S.C. § 271(c).

77. Defendants' infringement of the '247 patent has been willful.

78. Defendants' infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

79. Defendants' infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT II: INFRINGEMENT OF THE '784 PATENT (U.S. PATENT NO. 12,031,784)**

80. Plaintiffs incorporate the paragraphs of §§ I–IX.

81. Defendants have infringed and continue to infringe at least claim 1 of the '784 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety, ARC-Fire, and Kabuto families, in violation of 35 U.S.C. § 271(a).

82. Defendants have also induced infringement of the '784 patent in violation of 35 U.S.C. § 271(b).

83. Defendants have contributed to infringement of the '784 patent in violation of 35 U.S.C. § 271(c).

84. Defendants' infringement of the '784 patent has been willful.

85. Defendants' infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

86. Defendants' infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT III: INFRINGEMENT OF THE '538 PATENT (U.S. PATENT NO. 12,529,538)**

87. Plaintiffs incorporate the paragraphs of §§ I–IX.

88. Defendants have infringed and continue to infringe at least claim 1 of the '538 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety family, in violation of 35 U.S.C. § 271(a).

89. Defendants have also induced infringement of the '538 patent in violation of 35 U.S.C. § 271(b).

90. Defendants have contributed to infringement of the ’538 patent in violation of 35 U.S.C. § 271(c).

91. Defendants’ infringement of the ’538 patent has been willful.

92. Defendants’ infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

93. Defendants’ infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT IV: INFRINGEMENT OF THE ’159 PATENT (U.S. PATENT NO. 12,578,159)**

94. Plaintiffs incorporate the paragraphs of §§ I–IX.

95. Defendants have infringed and continue to infringe at least claim 1 of the ’159 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety, ARC-Fire, and Kabuto families, in violation of 35 U.S.C. § 271(a).

96. Defendants have also induced infringement of the ’159 patent in violation of 35 U.S.C. § 271(b).

97. Defendants have contributed to infringement of the ’159 patent in violation of 35 U.S.C. § 271(c).

98. Defendants’ infringement of the ’159 patent has been willful.

99. Defendants’ infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

100. Defendants’ infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT V: INFRINGEMENT OF THE '403 PATENT (U.S. PATENT NO. 12,636,403)**

101. Plaintiffs incorporate the paragraphs of §§ I–IX.

102. Defendants have infringed and continue to infringe at least claim 38 of the '403 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety, ARC-Fire, and Kabuto families, in violation of 35 U.S.C. § 271(a).

103. Defendants have also induced infringement of the '403 patent in violation of 35 U.S.C. § 271(b).

104. Defendants have contributed to infringement of the '403 patent in violation of 35 U.S.C. § 271(c).

105. Defendants' infringement of the '403 patent has been willful.

106. Defendants' infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

107. Defendants' infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT VI: TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

108. In this count, "Plaintiffs" means RBTM and Rare Breed. Plaintiffs incorporate the paragraphs of §§ I–III and X.

109. As described above, RBTM is the owner and Rare Breed is the exclusive licensee of the Registered FRT® Marks in connection with firearm triggers.

110. The federal trademark registrations for the Registered FRT® Marks are in full force and effect. RBTM owns all right, title, and interest in and to these registrations.

111. Plaintiffs' use of and rights in the Registered FRT® Marks predate any use by Mercier.

112. Mercier is wrongfully using "FRT" as a source identifier in U.S. commerce in connection with the distribution, advertising, or sale of firearm trigger products.

113. Mercier's use of the Registered FRT® Marks was and is without Plaintiffs' consent. Such unauthorized use is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Mercier's products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

114. Mercier's unlawful acts were committed, and continue to be committed, with full knowledge of Plaintiffs' prior rights in the FRT® marks, and are knowing, willful, and in bad faith.

115. Mercier's unlawful acts have caused and, unless enjoined by this Court under 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT® marks with Plaintiffs.

116. Plaintiffs are entitled to injunctive relief prohibiting Mercier from using the Registered FRT® Marks and any mark confusingly similar to them.

117. On information and belief, Mercier has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT® marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

**COUNT VII: FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)(1)(A))**

118. In this count, "Plaintiffs" means RBTM and Rare Breed. Plaintiffs incorporate the paragraphs of §§ I–III and X.

119. As described above, RBTM owns and Rare Breed is the exclusive licensee of the distinctive FRT® marks in connection with firearm triggers, through the continuous and substantially exclusive use of the FRT® marks since at least as early as 2020, which is well before any use of "FRT" by Mercier.

120. Plaintiffs' common-law rights in the FRT® marks predate Mercier's infringing use of "FRT" and any other confusingly similar name or mark comprised of or containing "FRT."

121. Mercier is using "FRT" as a source identifier in U.S. commerce in connection with the distribution, advertising, or sale of firearm trigger products.

122. Mercier's actions constitute use of a false designation of origin that wrongfully and falsely designates the origin of Mercier's goods and is likely to cause confusion or mistake, or to deceive, as to affiliation, connection, or association, or as to the origin, sponsorship, or approval of Mercier's goods by Plaintiffs. These actions constitute a false designation of origin in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

123. Mercier's unlawful acts were committed, and continue to be committed, with full knowledge of Plaintiffs' prior rights in the FRT® marks, and are knowing, willful, and in bad faith.

124. Mercier's unlawful acts have caused and, unless enjoined by this Court under 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT® marks with Plaintiffs.

125. Plaintiffs are entitled to injunctive relief prohibiting Mercier from using the FRT® marks or any other mark confusingly similar to the FRT® marks.

126. On information and belief, Mercier has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT® marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

**COUNT VIII: COMMON-LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

127. In this count, "Plaintiffs" means RBTM and Rare Breed. Plaintiffs incorporate the paragraphs of §§ I–III and X.

128. As described above, RBTM owns and Rare Breed is the exclusive licensee of the distinctive FRT® marks in connection with firearm triggers, through the continuous use of the marks since at least as early as 2020, before any use of "FRT" by Mercier.

129. Plaintiffs' common-law rights in the FRT® marks predate Mercier's infringing use of "FRT" and any other confusingly similar mark comprised of or containing "FRT."

130. Mercier is using "FRT" as a source identifier in U.S. commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

131. Mercier's use of "FRT" was and is without Plaintiffs' consent. Such unauthorized use is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Mercier's goods. Mercier's acts constitute trademark infringement and unfair competition under common law.

132. Mercier's unlawful acts were committed, and continue to be committed, with full knowledge of Plaintiffs' prior rights in the FRT® marks, and are knowing, willful, and in bad faith.

133. Mercier's acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Plaintiffs for which they have no adequate remedy at law, including undermining consumers' association of the FRT® marks with Plaintiffs.

134. Plaintiffs are entitled to injunctive relief prohibiting Mercier from using "FRT" or any other mark confusingly similar to the FRT® marks.

135. On information and belief, Mercier has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT® marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

(a) a judgment that Defendants have infringed each asserted Patent-in-Suit;

(b) damages adequate to compensate for the infringement, in no event less than a reasonable royalty, with pre- and post-judgment interest and costs (35 U.S.C. § 284);

(c) enhanced damages for willful infringement (35 U.S.C. § 284);

(d) a preliminary and permanent injunction against further infringement of any unexpired Patent-in-Suit (35 U.S.C. § 283);

(e) a finding that the case is exceptional and an award of reasonable attorneys' fees (35 U.S.C. § 285);

(f) on the trademark counts, an injunction (15 U.S.C. § 1116);

(g) on the trademark counts, Defendants' profits, Plaintiffs' damages, and costs (15 U.S.C. § 1117(a));

(h) on the trademark counts, enhanced damages and attorneys' fees where the law allows (15 U.S.C. § 1117(a)); and

(i) any other relief the Court finds just.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable. Fed. R. Civ. P. 38.

DATED: November 19, 2026

Respectfully submitted,

*<u>/s/ Matthew A. Colvin</u>*

Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
Bret T. Winterle
Texas Bar No. 24084249
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
bruce@fr.com
winterle@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Oliver J. Richards
CA Bar No. 310972
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
E-mail: ojr@fr.com
Tel: (858) 678-5070
Fax: (858) 678-5099

Glenn D. Bellamy (admitted *pro hac vice*)
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
Texas State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

***Attorneys for Plaintiffs***
***ABC IP, LLC and Rare Breed Triggers, Inc.***

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served on November 19, 2026, on all counsel of record who are deemed to have consented to electronic service through the Court's CM/ECF system.

*/s/ Matthew A. Colvin*
Matthew A. Colvin